**STATE, ex rel. KAY, Relator, v. BOARD OF ELECTIONS OF CUYAHOGA COUNTY, Respondent.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25215.   Decided April 18, 1960.

Richard B. Kay, for relator.

John T. Corrigan, Pros. Atty., for respondent.

(HUNSICKER, J, of the Ninth District, sitting in place of KOVACHY, J.)

## OPINION

By SKEEL, J.

This appeal comes to this court on questions of law from a judgment entered for the defendant after trial to the court in the Court of Common Pleas of Cuyahoga County. The action was one in mandamus wherein the relator prayed for an order directing the Board of Elections of Cuyahoga County not to print the name of A. L. Kearns on the Republican Primary Ballot as a candidate for the office of County Prosecutor for the primary election to be held May 3, 1960, as provided by law.

The facts, as shown by the transcrpit and bill of exceptions, are:

**First:** That A. L. Kearns filed five petition papers with the Board of Elections of Cuyahoga County as a candidate for the office of County Prosecutor as the basis for having his name printed on the Republican Party ballot as a candidate to be presented to the Republican voters for the primary election to be held May 3, 1960.

**Second:** That seventeen names out of a total of one hundred twenty-five names contained in the petition were duplicated (fifteen of such duplications being on one petition containing twenty-five names) and one signer on the petition was not a registered voter. There were 105 undisputed valid signers on the petition, one hundred signers being the number required by §3513.06 R. C., to qualify for the office for which the petition was filed.

**Third:** The five petition papers filed by the candidate upon which his declaration of candidacy was printed were acknowledged separately by two notary publics and the date of such acknowledgement was recorded thereon as January 29, 1960. It is also made to appear that the signers affixed their signatures to the petitions on January 28th. This fact appears by affidavits of nine of the signers filed by the relator with the Election Board.

**Fourth:** Affidavits were also filed with the Election Board by each notary public, who verified the signatures of the candidate on his declaration of candidacy, stating that the declaration was sworn to by the candidate on January 28th and that the date of the 29th was in error. This fact is not otherwise disputed.

Fifth: Some claim is also made by the relator-appellant that in attempting to take depositions of certain witnesses before the trial of this case, the witnesses who were subpoenaed refused to testify until the mileage and one day's witness fee of three dollars was paid and that upon citation of such witnesses to the court by the notary, the court held, upon trial, that the witnesses acted within their lawful rights. It was the contention of the relator that the witness fee, as provided by law, was one dollar, which it was claimed was tendered, instead of three dollars, the amount demanded by the witnesses.

Sec. 3513.05 R. C., in part, provided, after setting out the manner in which a protest against a primary petition is to be filed and notices of hearing of the protest given:

"* * *

"At the time fixed such election officials shall hear the protest and determine the validity or invalidity of the declaration of candidacy and petition. If they find that such candidate is not an elector of the state, district, county, or political subdivision in which he seeks a party nomination or election to an office or position, or has not fully complied with §§3513.01 to 3513.32 inclusive, R. C., his declaration of candidacy and petition shall be determined to be invalid and shall be rejected, otherwise it shall be determined to be valid. Such determination shall be final."

The approach of the Board of Elections in determining a protest is to see to it that every qualified elector who desires to be a candidate for public office and who complies reasonably with the statutory requirements should not be prevented from accomplishing his purpose by inconsequential technicalities in carrying out statutory requirements.

In State, ex rel. McGowan v. Board of Elections of Summit County et al, 157 Oh St 428, 105 N. E. 2d 639, the court said in the syllabus:

"Where a protest against a candidacy is filed pursuant to the provisions of §4785-70 GC, on the sole ground that in 1930 the candidate falsely stated in his registration with the board of elections that he was born in Ohio, whereas, he was born in Ireland, and, upon hearing, it is established that his parents immigrated to America about the time he was born and that he could not determine with certainty whether he was born before or after their arrival in Ohio, but that his honest belief at the time of his said registration was that he was born in Ohio and it is further established that his father became a naturalized citizen of Ohio in 1892 when the candidate was seven years of age, the board of elections is required to overrule the protest and sustain the declaration of candidacy."

and on page 434 of the opinion, quoting from the Court of Appeals opinion in the same case, said:

"The duty of the election board is to see to it that only those who are privileged by law to vote are permitted to exercise that sovereign right. It is equally their duty not to deprive one who is by the Constitution and laws of the United States and state of Ohio an elector of the right to vote or run for public office."

In the case of State, ex rel. Klink, v. Eyrich, 157 Oh St 338, 105 N.

E. 2d 399, the court concluded that a finding of the Board of Elections regarding the voting residence of a candidate will not be disturbed by a court unless the evidence before the board was such as to require, as a matter of law, a determination that the candidate's voting residence was not as stated in his declaration of candidacy. In other words, if there is substantial evidence to sustain the decision of the Board of Elections, such decision must be sustained. In passing on a protest against the sufficiency of a candidate's declaration and petition where there is no claim of fraud or corruption on the part of the board, unless there is shown to be a clear violation of law by the protestant, this court cannot say that the board abused its discretion. The last sentence of the majority opinion on page 339 provides:

"The record of the hearing before the board discloses substantial evidence supporting the finding of the board, and such finding will not be disturbed by this court."

This conclusion is clearly applicable to the hearing before the board in this case. A transcript of the hearing on this protest, with supporting evidence, was received in evidence upon hearing of this case from which it is clear that the board exercised its sound discretion in finding the essential provisions of the statutes regulating filing of nominating petitions seeking to become a party candidate for a public office.

We hold that the same candidate may make as many separate declarations of candidacy in his petition papers as there are separate petition papers so long as there is no conflict. The statute does not set out the manner in which the Board of Elections is to conduct a hearing of a protest. Any reasonable investigation conducted in good faith satisfies the statute and if based on affidavit or otherwise, the board concludes that the declaration of candidacy preceded and was printed and executed on the petition papers before those supporting the candidacy signed such petition papers, the board acted within its power to disregard any erroneous date typewritten thereon. We also find that the evidence discloses no violation of law by reason of the duplication of signatures of some signers who affixed their signature to two separate petition papers by mistake but not with fraudulent intent.

While all of these questions are supported by some evidence and commented upon in the briefs of the parties, the only allegation in relator's first amended petition is that there are not enough valid signatures on the petition. From the entire record it is clear that the relator did not show a clear and unchallenged right to a writ of mandamus as prayed for.

This leaves only the question of the failure or refusal of certain witnesses to testify on deposition because they were not tendered the proper witness fee. There is no bill of exceptions filed covering the hearing of the notary public's request for instructions, so that the question is not properly presented here. The court's journal entry recites that there was a hearing on this application. However, even if we disregard the absence of a bill of exceptions, from the entries shown on the face of the record, it is clear that error did not intervene

if, as is claimed, the relator was required to deposit three dollars, plus mileage, to be paid to each witness subpoenaed as a prerequisite to require such witness to testify.

Sec. 2317.18 R. C., provides, in part:

"A witness may demand his traveling fees and fee for one day's attendance when a subpoena is served upon him, and if not paid, he is not obliged to obey the writ. * * *."

Sec. 2335.05 R. C., provides in the first sentence:

"In all cases or proceedings not specified in §§2335.06 and 2335.08 R. C., each person subpoenaed as a witness shall be allowed one dollar for each day's attendance and the mileage allowed in courts of record."

Sec. 2335.06 R. C., in part, provides:

"Each witness in civil cases shall receive the following fees:

"(A) Three dollars for each day's attendance at a court of record, or before a judge of a county court, mayor, or person authorized to take depositions, to be taxed in the bill of costs."

An action in mandamus is a civil action under the Revised Code of Ohio. There are only two kinds of actions therein provided—that is a criminal action and a civil action. There are many special proceedings provided for, such as divorce cases and the like, but from the standpoint of the procedure by which the issues when made up by the pleadings (necessary in every case) and tried in a judicial proceeding, they are, in all instances, civil proceedings.

In O. Jur. 2d Vol. 35, page 241, under paragraph 3, dealing with mandamus and headed "General Nature of Remedy—Mandamus as a Civil Action"—it is said:

"Although at one time mandamus was declared a special proceeding in Ohio, it is now well settled that it is a civil action, and it has by statute all the attributes of a civil action." Sec. 2731.09 R. C.

In State, ex rel. v. Crites, Auditor, 48 Oh St 142, 26 N. E. 1052, the first paragraph of the syllabus provides:

"1. In mandamus, as in civil actions, a general demurrer to the reply will search the record and put in issue the sufficiency of the petition."

and on page 175 of the opinion, the court said:

"* * * In view of these express provisions of the statute, it is difficult to see wherein a proceeding in mandamus differs in any material respect from a civil action, or even in any respect, except in name."

See also State, ex rel. Barker v. Philbrick, 69 Oh St 283, 69 N. E. 439, at page 285; State, ex rel. Carson v. Board of Education, 115 Oh St 55, 152 N. E. 646; State, ex rel. Vining v. Commrs., 15 C. C. 40.

These authorities clearly show that civil procedure applies to actions in mandamus so that the fee for witnesses subpoenaed upon deposition or otherwise, as provided for by §2335.06 R. C., applies.

For the foregoing reasons, the judgment is affirmed.

HURD, PJ, HUNSICKER, J, concur.